BECK v. BECK.

No. 9698.

Court of Civil Appeals of Texas.

San Antonio.

Jan. 15, 1936.

O. Kennedy, of Beeville, for appellant.

Ney Wade and L. D. Stroud, both of Beeville, for appellee.

BOBBITT, Justice.

The appellant herein, Grace Amelia Beck, plaintiff in the trial court, presents this appeal from a judgment of the district court of Bee county, wherein plaintiff was denied any recovery on her suit for alleged damages against appellee, Mrs. Lina Beck, defendant below, on the claim that appellee had wrongfully collected and retained the proceeds of two insurance policies following the death of the insured, Thoralv Gustave Beck, husband of appellant and son of appellee, the proceeds of which policies appellant claims belonged to her, asserting that during his lifetime her said husband "gave, granted, conveyed and delivered" to her both of said policies of insurance.

For convenience, the parties are here designated as in the trial court.

It is undisputed that long prior to the marriage of plaintiff to Thoralv Gustave Beck, her deceased husband, Thoralv acquired the two policies of insurance on his life and named his mother, defendant herein, in each thereof, as beneficiary; that the said son borrowed money from his mother, from time to time, and at the time of his death, on April 30, 1934, he was indebted to her in excess of $3,800; that at least for a time the two policies of insurance, one for $2,000 and the other for $3,000, were in the possession of the mother, who at various times paid the premiums on them to keep them alive; that neither company issuing such policies was ever requested by the insured, or any one else, to change the beneficiary therein, nor did either company, or defendant, ever have any notice or information of the alleged parol gift of such policies or either of them by Thoralv to his wife, plaintiff herein; that after the death of Thoralv, his mother, defendant herein and named beneficiary in both of said policies of insurance, made appropriate proof of his death to the respective companies, and, after some controversy with the companies as to the amount due thereon, made settlement with each, whereby she collected the balance due her, as beneficiary, under the provisions of said policies, in the total amount of $4,244; that the mother paid all funeral as well as expenses of the last illness of her son, in the sum of $900.

It appears that some months after the death of her husband Thoralv, and following the happening of the events above enumerated, plaintiff then acquired, from some parties in the state of California, the two original policies of insurance, the proceeds of which she now claims in this suit. It seems clear, from the record before us, that at the time, and following the death of her husband, plaintiff made no claim to either of the insurance companies, or to any one else, that she owned or had any interest in the policies in question. No notice or request in writing, or otherwise, was shown or claimed to have been made by the insured, during his lifetime, to either of the insurers of any change or intention to change the beneficiary in the contracts of insurance. As a matter of fact, as we carefully consider the record before us, it seems conclusive that the husband and son, Thoralv, well knew that the policies of insurance could not and would not have been alive and in effect but for the payments of the premiums thereon by his mother, and this, in addition to the undisputed fact that she loaned him relatively large sums of money from time to time for other purposes; and it seems clear that he pledged the policies with her, and intended to secure his mother for such advances or loans in making her the beneficiary in such policies. If the son, during his lifetime, had intended to change the beneficiary in the policies and thus prevent his mother from getting the benefits of her kindness and generous advances to him, while he lived and in case of his death before she passed away, he could have and should have complied with the very simple and straightforward requirements to make such intention clear. Excepting the purported

statements alleged to have been made by the deceased to plaintiff, no such intention is shown by any fact or circumstance in the record before us, and no semblance of reason or excuse is suggested for its absence from the record.

Under such circumstances, and some time after defendant had made settlement with the insurance companies, plaintiff instituted this suit against her mother-in-law, and plead that the policies of insurance were duly executed in the years of 1923 and 1925, and that the defendant was named beneficiary therein, at the request of her said son; that plaintiff married Thoralv Gustave Beck on or about March 3, 1933, and lived with him, as his wife, until his death on April 30, 1934; that Thoralv asked her to marry him about February 1, 1933, telling her that if she would marry him "he would give her the policies of insurance." Plaintiff further alleged that Thoralv, "immediately after said marriage, gave, granted, conveyed and delivered unto plaintiff herein, the life insurance policies described, said gift and transfer of said policies having been made by said Thoralv Gustave Beck to plaintiff herein by parol. That at the death of said Thoralv Gustave Beck, on April 30, 1934, the said life insurance policies, above described and referred to, were not the property of the estate of deceased, but were the separate property of plaintiff, the same having been given, granted, conveyed and delivered unto her by said Thoralv Gustave Beck, who was her husband, prior to his death. That plaintiff accepted from said Thoralv Gustave Beck said life insurance policies on the date he gave them to her. That by such act said Thoralv Gustave Beck, in giving and transferring said life insurance policies to plaintiff, divested defendant, Mrs. Lina Beck, of all right, title and interest she might have had in such policies and the proceeds therefrom."

Plaintiff alleged that, after the death of Thoralv, his mother, defendant herein and beneficiary in said policies, without the knowledge or consent of the plaintiff, collected the proceeds due on said policies from the insurance companies and retained the same, to plaintiff's damage in the sum of $5,000, for which she prayed judgment of the court.

Defendant, in her answer, denied generally the allegations of the plaintiff, and specially denied that the plaintiff ever became the owner of, or was in any way interested in, said insurance policies; that the deceased, during his lifetime, lived with the defendant the greater portion of the time, and that she made advances of various sums of money to her son, during, his lifetime, and that the policies of insurance were pledged with her as security for such advances; that the total sums of money advanced by her to her son were in excess of $3,800.00; that after the death of her said son she paid all expenses of his last illness, hospital, funeral, and burial expenses, amounting in the aggregate to $900, and that the total amount collected under said policies was barely sufficient to reimburse her for the money she had advanced her son during his lifetime.

The case proceeded to trial before a jury, and, after the testimony was closed and under appropriate motion therefor, the court instructed the jury to find generally for the defendant, which was accordingly done.

Plaintiff contends that the trial court erred in granting defendant's motion for an instructed verdict, asserting that: (a) The evidence wholly failed to show that defendant held any vested right in said policies that would have prevented the insured from effecting a valid parol gift thereof to plaintiff; (b) the evidence wholly failed to show that defendant held any vested interest in the policies in question that would have entitled her to notice of a change of beneficiary or that would have required her consent to such change; (c) that the provisions of said policies relating to the manner of effecting any change the insured might desire to make as to the beneficiary were intended and are solely for the benefit and protection of the insurance companies, and could not be invoked by the defendant; and (d) that the court erred in refusing to permit the jury to pass upon the question of whether or not the insured, during his lifetime, made a valid parol gift of said policies to plaintiff; plaintiff asserting she had produced sufficient legal evidence to support a verdict of the jury to that effect.

▍ It should be borne in mind that this suit is not one to collect on the policies of insurance, but is an action for alleged damages, brought by plaintiff against defendant, the named beneficiary in both policies of insurance in question. If plaintiff knew anything about the policies, or had, or claimed, any interest therein, at the time of and immediately following the death of her husband, the insured, she

could have, and apparently should have, given notice to the insurers, or the beneficiary in the contracts of insurance, of her claim. Such would have been the natural, normal action to have taken, and it would have given all parties interested in the policies the benefit of the information or claim which plaintiff here now asserts, and only after the insurers and the named beneficiary in the policies have completed their settlement and adjustments thereon, in accordance with the terms of the policies and the law relating to payment thereunder. Notwithstanding the facts which plaintiff now says existed at the time of the death of her husband, that prior to and after their marriage her husband told her "he would give her the policies of insurance, that said policies were hers; that she could collect on them in case anything happened to him," etc., and her allegation that said policies were "delivered" to her during the lifetime of her husband, when her husband died she made no claim of any kind or character to either of the insurance companies, and no claim to the defendant, beneficiary in the policies, that the policies were hers, or that she had any interest in the same.

Then, after the adjustments and payments between the insurers and the beneficiary had been concluded, plaintiff filed this suit against defendant for damages, alleging that defendant wrongfully collected the proceeds of the said insurance policies and retained the same, knowing that she was not entitled thereto, and with knowledge of the fact that her son, Thoralv, had given and transferred said policies to plaintiff during his lifetime, and that plaintiff was entitled to the proceeds therefrom, etc., to plaintiff's damage in the sum of $5,000.

We have carefully reviewed the record before us, and we find no testimony or evidence of any character which supports, or even tends to support, plaintiff's allegation that the defendant, or either of the insurance companies, had any knowledge or information or notice from plaintiff, or from any other source, that plaintiff had, or was claiming, any interest in either of said policies. Defendant simply collected the proceeds of the policies of insurance, in complete accordance with the terms and provisions thereof, and without any semblance of notice or claim to the proceeds thereof on the part of plaintiff. In this material respect plaintiff's proof wholly fails to support or sustain her allegations.

In view of this state of the record, which is clear and conclusive, it is obvious that plaintiff wholly failed to establish her allegation and claim against the defendant for damages, and that the trial court properly instructed the jury to find for the defendant.

Even though the trial judge may have given superfluous or even insufficient reasons in support of his action, in granting defendant's motion, such would not have any bearing on the result, if he in fact reached the correct conclusion. It is clear to us, on the face of the record before us, and in view of the undisputed testimony, that plaintiff wholly failed to establish her allegations by legal proof, and that no judgment in favor of plaintiff, if rendered in her favor, could be permitted to stand.

Plaintiff insists that the court's action, in instructing a verdict in this case, has the effect of the court holding that the insured could not, during his lifetime (a) make a parol gift of the policies, (b) devise the policies by will, (c) or make a written assignment of the policies as security for a debt. With this contention we do not agree. On the contrary, it seems well established that, under certain conditions and circumstances, the proceeds of insurance policies may pass and legally vest through either of the three methods mentioned. The cases cited by plaintiff relate to a different state of facts than we find before us in this case. Plaintiff cites no case, and we have not been able to find any authority, which authorizes the courts to change the beneficiary in a contract of insurance in a policy payable to a person chosen by the insured, and accepted by the insurer as such, in the absence of some definite, affirmative, and reasonable action or intention to that effect on the part of the insured. In the case at bar there is no evidence of any kind showing an intention on the part of the insured to change the beneficiary from the mother to the wife, other than the alleged statements supposed to have been made by the insured now deceased, to the plaintiff many months prior to his decease.

It is undisputed that deceased did nothing further than make those alleged statements; and, at best, it occurs to us that, taking them at their face value, they

express no more than a mere intention on his part to some time in the future do the things which plaintiff now contends that he did do, but which were not in fact done or accomplished. The mere intention, even though plainly expressed, to change a beneficiary in a policy of insurance, if not in fact carried out in accordance with the terms of the policy, or in full conformity with the other means or methods legally effecting such change, is of no effect. Wright v. Wright (Tex.Civ.App.) 44 S. W.(2d) 1019; Fuos v. Dietrich (Tex.Civ. App.) 101 S.W. 291; Splawn v. Chew, 60 Tex. 532; Lord v. New York Life Ins. Co., 95 Tex. 216, 66 S.W. 290, 291, 56 L. R.A. 596, 93 Am.St.Rep. 827; R.C.S. arts. 4732, 4831 (as amended by Acts 1931, c. 48, § 5 [Vernon's Ann.Civ.St. art. 4831]); also articles 5047, 5048, 5050, and article 7144a, § 16(b), Vernon's Ann.Civ.St.; Farracy v. Perry (Tex.Civ.App.) 12 S.W. (2d) 651, and authorities therein cited; C.J. Vol. 37, p. 584, § 350.

In the face of the undisputed testimony and circumstances clearly shown by the record in this case, and particularly the fact that the policies of insurance were not in fact delivered to plaintiff as alleged, to permit a judgment to stand, if granted in favor of plaintiff herein, would be, in effect, aiding the deceased son to perpetrate a fraud upon his mother; and that in the absence of any intention on his part so to do. If the insured had intended or desired to change the beneficiary in the policies in question from his mother and in favor of his wife, as she contends, he had thirteen months after his marriage in which to make the change, in a simple and straightforward manner. It seems clear that he made no effort so to do. He knew that he owed his mother relatively large sums of money, which he had borrowed from her; that she had paid the premiums on the policies of insurance; he lived with her, in her home, and recuperated from illness there after he was married to plaintiff herein; and the record shows that his mother paid all his hospital bills and expenses of his last illness, including his funeral expenses; and that the plaintiff herein made no suggestion or intimation of any claim to, or interest in, the policies of insurance until long after the death of her husband, and only after she had requested financial aid from defendant, her mother-in-law, and apparently had not received the same. The son and husband's lips are sealed in death; and it is a circumstance worthy of note that, while he lived and could have spoken and acted in the manner and form to effectuate the result which plaintiff here now contends, the record shows that he did not do so, but that the contrary situation is true.

Furthermore, the record before us clearly shows from the testimony of plaintiff herself that the insurance policies in question were never, in fact, delivered by the deceased to the plaintiff. She nowhere testifies that she ever saw the policies, or had them in her possession, until long after the death of her husband, when they were mailed to her by some party in the state of California. It seems to be conceded by plaintiff, but whether that be true or not, we hold to the view that, in the absence of "actual delivery" of the policy of insurance by the insured to the claimed new beneficiary, an alleged parol gift thereof does not have the effect of changing the beneficiary, nor entitle such claimant to the proceeds of such policies. Wright v. Wright, supra, and authorities cited; Nixon v. Malone (Tex.Civ.App.) 95 S.W. 577; Kelley v. McDonald (Tex.Civ.App.) 83 S.W.(2d) 414; Second Nat. Bank v. Dunn (Tex.Civ.App.) 84 S.W.(2d) 766.

For the reasons stated, and finding no reversible error on the part of the trial court herein, it is our opinion that the judgment should be in all things affirmed, and it is so ordered.

Affirmed.