Gloria Parker SMITH, Relator,

v.

The Honorable Thomas STANSBURY, Judge, 328th Judicial District Court, Fort Bend County, Respondent.

No. B14–88–254–CV.

Court of Appeals of Texas, Houston (14th Dist.).

July 28, 1988.

Robert A. Hinojosa, Dianne Richards, Houston, for relator.

Pamela R. Julian, Randal N. Rivin, Houston, for respondent.

Before PAUL PRESSLER, DRAUGHN and ELLIS, JJ.

## OPINION

PAUL PRESSLER, Justice.

Relator seeks to direct Respondent to vacate his order denying her Motion for Judgment Nunc Pro Tunc and to enter such Judgment. The writ will not issue.

Relator complains of certain language in a Decree of Divorce signed on February 3, 1987 alleging that the inclusion of certain language was a clerical error which could and should be corrected by entry of Judgment Nunc Pro Tunc.

On December 29, 1986 Relator and her then husband, William Reed Smith, appeared with their respective counsel before Judge Stansbury seeking a divorce and division of their community estate according to an agreed property settlement. At that time, the terms of the property settlement were recited. The judge approved the agreement, made it an order of the court and granted the divorce. The agreed provisions which are pertinent to the issue before us were stated in the following testimony:

Questions to Mr. Smith by his attorney:

Q. Also you are asking the Court to award to you all the personal property that you have in your possession plus the following items of personal property that Mrs. Smith will turn over to you.... Is that true? (No specific mention was made of insurance policies.)

A. Yes, that's correct.

The record continues in relevant part with the following statement by Mr. Smith's counsel:

The parties have agreed that ... Mr. Smith will get all of the insurance policies and retirement, accrued retirement benefits, that are presently in his name. Mrs. Smith will get all insurance policies presently in her name plus all retirement and profit sharing benefits accrued. Mrs. Smith will get the Texaco insurance policy if it is convertible. If it is not convertible, it will be cancelled.... The Cancer and Intensive Care insurance policies will be divided into two separate policies if at all possible and split equally between the parties. All of the warranty deeds, deeds of trust to secure assumptions, titles to automobiles will be executed and turned over to the proper party within 20 days from the date of this divorce.

A hearing for the purpose of signing this judgment was set for the following week. However, just four days later, on January 2, 1987 William Reed Smith died of natural causes. At the time of Mr. Smith's death, Relator was still the named beneficiary on his three life insurance policies. On February 3, one month after Mr. Smith's death, the written divorce decree was signed and entered. The language complained of is the following:

*Property Awarded to Petitioner:* It is ordered, adjudged and decreed that Petitioner William Reed Smith be and he hereby is awarded all of the property in his sole possession, custody and control,

plus all property, both real and personal, set out in Exhibit "A" which is attached hereto and incorporated herein by reference for all purposes, and Respondent Gloria Parker Smith is hereby divested of any and all right, title and interest in and to said property....

The property set out in Exhibit "A" includes the three insurance policies on Mr. Smith's life. A reciprocal provision for the award of Respondent's property to her (as set out in Exhibit "B") follows in the decree and the same language divesting Petitioner of his "right, title and interest in and to said property" is included in this reciprocal provision. In a companion case currently pending before this court, Relator appeals the probate court's granting of a summary judgment against her based on the fact that the clear language of the decree divested her of any and all interest in the insurance policies.

Relator contends that inclusion of the statement that she was "divested of any and all right, title and interest in and to said property" was a clerical error correctable by entry of judgment nunc pro tunc and asks that we order Respondent to enter such judgment.

Rule 316 of the Texas Rules of Civil Procedure provides for correction of mistakes as follows:

Clerical mistakes in the record of any judgment may be corrected by the judge in open court according to the truth or justice of the case after notice of the motion therefor has been given to the parties interested in such judgment, as provided in Rule 21a, and thereafter the execution shall conform to the judgment as amended. Rule 316, TEX.R.CIV.P. (Vernon 1988).

■ Entry of a judgment nunc pro tunc is an appropriate procedure for the correction of *clerical* errors only. *Universal Underwriters Insurance Co. v. Ferguson*, 471 S.W.2d 28, 29 (Tex.1971); *Stock v. Stock*, 702 S.W.2d 713, 715–716 (Tex.App.—San Antonio 1985, no writ). Clerical error is that error which does not result from judicial reasoning or determination. *Nolan v. Bettis*, 562 S.W.2d 520, 522 (Tex.Civ.App.—Austin 1978, no writ). Judgment nunc pro tunc should be granted only if the evidence is clear, satisfactory and convincing that *clerical* error was made. *Stuart v. City of Houston*, 419 S.W.2d 702, 703 (Tex.Civ.App.—Houston [14th Dist.] 1967, writ ref'd. n.r.e.). *Perry v. Nueces County*, 549 S.W.2d 239, 242 (Tex.Civ.App.—Corpus Christi 1977, writ ref'd. n.r.e.). (Emphasis added.)

■ While arguing that the error complained of is merely clerical, Relator admits that inclusion or omission of the language substantively changes the effect of the judgment with regard to any claim which she hoped to assert to the proceeds of her ex-husband's life insurance policies. It is, after all, the inclusion of this language which forms the basis for the summary judgment rendered against appellant by the probate court. Clearly, therefore, there is no clerical error and the judgment is not subject to "correction" by entry of judgment nunc pro tunc. *Stock v. Stock*, 702 S.W.2d at 716.

At the time of the signing of the judgment, all counsel approved the judgment as to form. It was signed by Relator as well. There is no evidence of an objection by either side to the language divesting the parties of their interests in each other's personal property. In addition, at the signing, both attorneys added and initialled similar language divesting each party of all right, title and interest in and to the real property set aside to the other. This action indicates an awareness on the part of counsel that the usage of such legal phraseology is advisable to effect the court's *division* of property as mandated by § 3.63 of the Texas Family Code. It further suggests that the attorneys were not only aware of the inclusion and effect of such language but also paid attention to its usage in the judgment as signed. Relator, therefore, has failed to show that its inclusion resulted through any error.

Relator argues that, at the time of the signing, which was prior to this court's decision in *Novotny v. Wittner*, 731 S.W.2d 103 (Tex.App.—Houston [14th Dist.] 1987, writ ref'd. n.r.e.), she was unaware that the

effect of the language she now seeks to exclude was to terminate her *beneficial* interest in the life insurance policies. Earlier decisions have held that a divorce decree does not extinguish the beneficial interest of a party unless there is *clear language* in the decree that terminates those rights. *Parker v. Parker*, 683 S.W.2d 889 (Tex.App.—Fort Worth 1985, writ ref'd.); *Partin v. de Cordova*, 464 S.W.2d 956 (Tex. Civ.App.—Eastland 1971, writ ref'd.). No case suggests, however, that any particular "magic words" are required to effect such a result.

Finally, even if there were an error, it would not be considered clerical:

Where a judgment is prepared by an attorney ... and is signed and entered by the court, it becomes the judgment of the court. Recitations or provisions alleged to have been inserted or omitted by a mistake of the attorney are nevertheless part of the court's judgment. A judgment *nunc pro tunc* cannot readjudicate or rewrite and change the decretal portion of the judgment as rendered. *Stock v. Stock*, 702 S.W.2d at 716.

■ Mandamus is an extraordinary writ which issues to require the execution of a matter whose merit is beyond dispute. The petitioner must have a clear right to performance of the act he seeks to compel. *City of Houston v. Albright*, 666 S.W.2d 279, 281 (Tex.App.—Houston [14th Dist.] 1984, writ ref'd. n.r.e., *per curiam*, 677 S.W.2d 487 (Tex.1984)). In order for this court properly to issue a writ of mandamus, relator must establish: 1) that the trial court either clearly abused its discretion or failed to observe a mandatory statutory provision; and 2) that she has no adequate remedy by appeal. *Garcia v. Peeples*, 734 S.W.2d 343, 345 (Tex.1987); *Proffer v. Yates*, 734 S.W.2d 671, 673 (Tex. 1987) (*per curiam*); *McGowan v. O'Neill*, 750 S.W.2d 884 (Tex.App.—Houston [14th Dist.] 1988, no writ). While the trial court *may* correct *clerical* errors by entry of judgment nunc pro tunc, there is no mandatory duty imposed on the trial court to correct an error which is judicial in nature and, in fact, such corrections are prohibit-

ed. Therefore the writ of mandamus will not issue.

ELLIS, Justice, concurring.

I concur only in the result reached by the panel.